UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JAMES P. RUTLEDGE,<br><br>              Plaintiff,<br><br><br>       vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | 3:23-CV-03018-RAL<br><br><br>OPINION AND ORDER GRANTING<br>GOVERNMENT'S MOTION TO DISMISS |

James Rutledge entered a conditional guilty plea to two federal crimes after this Court denied a motion to suppress evidence seized from his car.  United States v. Rutledge, 20-CR-30144, Docs. 71, 93.[1]  Rutledge appealed this denial, but the United States Court of Appeals for the Eighth Circuit affirmed.  United States v. Rutledge, 61 F.4th 597 (8th Cir. 2023).  Rutledge has now moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  Rutledge v. United States, 23-CV-3018, Doc. 1.[2]  He alleges ineffective assistance of counsel, violations of his Fourth Amendment rights, defects in the indictment, and witness credibility issues.  The Government moves to dismiss Rutledge's petition for failure to state a claim.  CIV Doc. 19.  For the reasons explained below, this Court grants the Government's motion and denies Rutledge's § 2255 motion.

---

[1]Citations to Rutledge's criminal case hereafter will be "CR Doc." followed by the document number from the Case Management/Electronic Case Filing (CM/ECF) system.
[2]Citations to pleadings from this case, 23-CV-3018, in which this Opinion and Order is being entered, will be "CIV Doc." followed by the CM/ECF document number.

I.    **Facts**

Officers with the Northern Plains Safe Trails Drug Enforcement Task Force (Task Force) learned of Rutledge in the summer of 2020 when investigating methamphetamine distribution in central South Dakota. CR Doc. 47 at 13–14, 57–58, 88, 104–05, 112–21. Intelligence from an informant and a local drug dealer's phone made officers suspect that Rutledge was using rental vehicles to transport methamphetamine from Colorado to Winner, South Dakota. Id. at 14–15, 120–21, 133; see also CR Doc. 43 at 15–37. Alexa D'Acunto, an agent with the South Dakota Division of Criminal Investigation, obtained pen register trap and trace warrants for phone numbers associated with Rutledge. CR Doc. 47 at 105; CR Doc. 43 at 15–37. Among other things, the warrant enabled officers to track the location of the cellular device assigned to Rutledge's phone number. CR Doc. 47 at 105–08; CR Doc. 43 at 1–2, 15–37.

In late August 2020, Rutledge's number switched from a phone in South Dakota to a phone in central Colorado. CR Doc. 47 at 107, 121–22; CR Doc. 43 at 1–2. Tracking data showed that the phone was traveling from Colorado towards Colome, South Dakota. Rutledge, 61 F.4th at 599. Agent D'Acunto and other Task Force officers, including Trooper Dylan Dowling and Sergeant John Lord with the South Dakota Highway Patrol, planned an interdiction stop of the vehicle carrying the phone. CR Doc. 47 at 15, 57–59, 107–08. Not knowing who was driving the vehicle or even what the vehicle looked like, Agent D'Acunto told the officers to stop the vehicle if and when they developed probable cause to do so. Id. at 108, 123–25; CR Doc. 43 at 1–2.

Trooper Dowling and BIA Agent Derek Parish waited in Colome in an unmarked police car parked near the intersection of U.S. Highways 183 and 18. CR Doc. 47 at 16–19; CR Doc. 42 at 19. Highway 18 intersects with Highway 183 at an angle, with Highway 183 running north-

2

south and Highway 18 running southeast to northwest.[3]  CR Doc. 42 at 19.[4]  A vehicle traveling

north on Highway 183 towards the intersection would encounter two stop signs, one on each side

of the road.  CR Doc. 42 at 19; CR Doc. 47 at 20–21.  These stop signs are offset because of the

angle at which Highway 18 intersects with Highway 183.  CR Doc. 42 at 19; see also CR Doc. 47

at 20–21.  The signs are about 120 feet apart, and a vehicle driving north on Highway 183 towards

the intersection would encounter the stop sign on the right side of the road first.  CR Doc. 64 at 3.

Trooper Dowling and Agent Parish could see both stop signs from their secluded position.  CR

Doc. 47 at 19–20, 24.

At around 4:50 a.m., Trooper Dowling saw a white van traveling north on Highway 183

towards the intersection.  Id. at 23, 26, 34; CR Doc. 43 at 1–2, 11.  The van made a complete stop

at the first stop sign but rolled through the second stop sign.  CR Doc. 47 at 24, 32, 37, 46, 48.

Trooper Dowling informed Sergeant Lord and other Task Force members that the van failed to

come to a complete stop at the stop sign and then headed west.    Id. at 26, 40, 63, 82.

Sergeant Lord, who was driving south on Highway 49, passed a white van a few miles

north of the intersection.  Id. at 63–64.  When another officer communicated soon after that he

could not locate a vehicle west of the intersection, Sergeant Lord turned around and pulled the van

over.  Id.  There were no other vehicles in the area.

Sergeant Lord approached the van, observed a red mini torch in the center console, and

informed Rutledge, who was driving the van, that he had been stopped for failing to stop at a stop

sign in Colome.  CR Doc. 64 at 3; CR Doc. 47 at 67.  Upon Sergeant Lord's request, Rutledge

---

[3]This is a peculiar intersection with Highway 18 turning into Highway 183 after the intersection
while Highway 183 turns into Highway 49 after the intersection.  CR Doc. 42 at 19.  Highway 49
then runs north while Highway 183 runs northwest.  Id.
[4]This Court included a picture of the intersection at the end of its opinion denying Rutledge's
motion to suppress.  CR Doc. 64-1.

provided his driver's license, and the passenger produced the vehicle insurance and rental car agreement. CR Doc. 47 at 66. According to Sergeant Lord, Rutledge and the passenger appeared scared and nervous. Id. at 65.

Rutledge accompanied Sergeant Lord to the patrol car, where Lord began writing a warning ticket. CR Doc. 64 at 4. Rutledge and Sergeant Lord talked briefly while Sergeant Lord worked on his computer. Id. Sergeant Lord then said that more than one address came back for Rutledge's license, and Rutledge explained that he was "kind of transitory right now" but provided a Boulder, Colorado mailing address. Id. Sergeant Lord updated Rutledge's address and continued to work on the ticket. Id.; CR Doc. 47 at 68–69, 96. In the meantime, another officer arrived with his drug dog, Demi.

Just under ten minutes into the stop and eight minutes after Rutledge entered the patrol car, the other officer deployed Demi around Rutledge's van. CR Doc. 64 at 4. Demi alerted to the presence of drugs in the van within twenty seconds of being deployed. Id.; Doc. 47 at 72. Officers searched the van and found loose methamphetamine, a marijuana vape pen, two partial marijuana cigars, marijuana products from a dispensary in Colorado, two scales with methamphetamine residue on them, and a safe. CR Doc. 47 at 75; CR Doc. 43 at 3–7. The safe was locked, but the officer who took Rutledge to jail found the key in Rutledge's wallet and returned to the scene to open it. CR Doc. 47 at 76; CR Doc. 43 at 3–7. Inside, officers found a handgun and about 200 grams of methamphetamine. CR Doc. 47 at 76–77; CR Doc. 43 at 3–7. Agent D'Acunto interviewed Rutledge at the Winner jail later that day. CR Doc. 47 at 109. Rutledge waived his Miranda[5] rights and made some incriminating statements. Id. at 134; CR Doc. 64 at 5.

---

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

A federal grand jury eventually indicted Rutledge for conspiring to distribute methamphetamine (Count I), possessing methamphetamine with the intent to distribute it (Count II) and possessing a firearm while being an unlawful user of a controlled substance (Count III). CR Doc. 1. Rutledge moved to suppress his statements and the evidence seized from his vehicle, arguing among other things that there was no probable cause for the traffic stop and that the officers unreasonably extended the stop so that Demi could sniff his vehicle. CR Docs. 29, 30, 48. Magistrate Judge Mark A. Moreno held a hearing on Rutledge's motion to suppress, during which he heard testimony from Trooper Dowling, Sergeant Lord, and Agent D'Acunto. He also received several exhibits into evidence, including videos of the traffic stop and photos of the intersection in Colome. Rutledge's lawyer Randall Turner asked that the suppression record remain open so that he could submit video evidence of the intersection and perhaps some evidence from the Department of Transportation (DOT) showing whether the second stop sign was present the morning Rutledge was stopped. CR Doc. 47 at 137–43. Judge Moreno granted the request, id., and both Rutledge and the Government submitted videos and photos of the intersection, CR Docs. 49, 51. Judge Moreno recommended denying Rutledge's motion to suppress, CR Doc. 58, and Rutledge objected to this recommendation, CR Doc. 63. This Court overruled the objections, adopted the report and recommendation, and denied Rutledge's motion to suppress. CR Doc. 64.

Rutledge pleaded guilty to Counts I and III but reserved the right to appeal the denial of his motion to suppress. CR Doc. 71. He appealed to the Eighth Circuit, arguing that the officers lacked an objectively reasonable basis to believe he committed a traffic violation, and that Sergeant Lord unconstitutionally expanded the stop to permit the dog sniff. Rutledge, 61 F.4th at 599; Rutledge's Appeal Brief, No. 22-1708, 2022 WL 2718909 (July 6, 2022). The Eighth Circuit affirmed, agreeing with this Court that it was objectively reasonable for Trooper Dowling to

conclude that Rutledge violated SDCL § 32-29-2.1[6] by failing to come to a complete stop at the second stop sign and that the stop was not unlawfully extended. Rutledge, 61 F.4th at 601–03.

Rutledge timely filed this § 2255 motion. CIV Doc. 1. Ground I of Rutledge's motion alleges that his lawyer Turner performed ineffectively in multiple ways. CIV Doc. 1 at 4. Ground II alleges violations of Rutledge's rights against unlawful searches and seizures and "witness credibility." CIV Doc. 1 at 5. He argues that there was no probable cause for the trap and trace warrants or the traffic stop, CIV Doc. 1-2 at 2–3, that Agent D'Acunto's testimony at the suppression hearing raised "serious questions about" her credibility, id. at 2, and that Sergeant Lord unconstitutionally expanded the traffic stop, id. at 4–5. Ground III alleges that the police reports and testimony at the suppression hearing contain inconsistencies and "perhaps outright deceit/lies." CIV Doc. 1 at 7. Ground IV alleges problems with the indictment. Id. at 8.

Because Rutledge claims ineffective assistance of counsel, this Court ordered that he choose between waiving his attorney-client privilege or having his ineffective-assistance claim stricken. CIV Doc. 7. Rutledge waived the attorney-client privilege, CIV Doc. 8, and the Government then filed an affidavit from Rutledge's prior counsel Turner, who is an assistant federal public defender for the Federal Public Defender's Office for the Districts of South Dakota and North Dakota, CIV Doc. 14.

## II. Analysis

### A. Grounds II & III

---

[6]Section 32-29-2.1 requires that:

> every driver of a vehicle approaching a stop intersection indicated by a stop sign shall come to a full stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection.

The Government argues that Grounds II and III must be dismissed because Rutledge either raised or failed to raise these claims on direct appeal. Two rules underlie this argument. First, prisoners typically cannot use § 2255 to relitigate claims that were raised and decided on direct appeal. Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc). The "rare exceptions," id. to this rule include certain sorts of changes in the law, Davis v. United States, 417 U.S. 333, 346–47 (1974); English v. United States, 998 F.2d 609, 612–13 (8th Cir. 1993), or when the prisoner produces "convincing new evidence of actual innocence," United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). Second, claims not raised on direct appeal are procedurally defaulted and may not be asserted in a habeas petition unless the petitioner can demonstrate "cause and actual prejudice" or "that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted); United States v. Collier, 585 F.3d 1093, 1096–97 (8th Cir. 2009).

Procedural default and the rule against relitigation require dismissal of Grounds II and III. These grounds allege a lack of probable cause for the traffic stop, that Sergeant Lord illegally expanded the stop, and that testimony by the police was not credible. But Rutledge raised these same issues on direct appeal and lost. Rutledge, 61 F.4th at 601–03. His appellate attorney argued that there was no reasonable suspicion for the traffic stop, that Trooper Dowling was not credible, and that Sergeant Lord illegally expanded the traffic stop. Appellant's Brief, No. 22-1708, 2022 WL 2718909 (July 6, 2022). The Eighth Circuit rejected all these arguments, Rutledge, 61 F.4th at 601–03, and Rutledge cannot relitigate them now unless he qualifies for one of the "rare exceptions" to the relitigation rule. Sun Bear, 644 F.3d at 702. No such rare exception exists here. See Davis, 417 U.S. at 346–47; Wiley, 245 F.3d at 752.

Rutledge's arguments about Agent D'Acunto's credibility and probable cause for the trap and trace warrants were not raised on direct appeal and are procedurally defaulted. Rutledge does not claim actual innocence, so he must show both cause for failing to raise these claims on direct appeal and actual prejudice from it. Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013). Rutledge does not specifically argue that he can show cause and prejudice, but he does suggest in his reply brief that counsel should have raised the claims he now makes in Grounds II and III. CIV Doc. 24 at 14. Ineffective assistance of appellate counsel may serve as cause and prejudice to avoid a procedural default. Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005). Strickland v. Washington requires prisoners claiming ineffective assistance of appellate counsel to show both that counsel's performance was deficient and that they were prejudiced by this deficiency. 466 U.S. 668, 687 (1984). Courts analyzing Strikland's performance prong "apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Charboneau, 702 F.3d at 1136 (cleaned up and citation omitted). This analysis is "particularly deferential" when the alleged ineffectiveness is counsel's failure to raise an issue on direct appeal. Id. After all, effective appellate advocacy often requires filtering out weaker arguments. Id. "[A]bsent contrary evidence," courts thus assume "that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." Id. at 1136–37 (cleaned up and citations omitted). As for Strickland's prejudice prong, Rutledge must show "a reasonable probability" that, but for counsel's deficient performance, he would have succeeded on direct appeal. Charboneau, 702 F.3d at 1138.

Rutledge cannot meet either Strickland prong. Rutledge's appellate attorney was not deficient by failing to argue that the trap and trace warrants lacked probable cause and that Agent D'Acunto's affidavit in support of these warrants was not credible. Indeed, none of Rutledge's

arguments or citations to the record suggest that Agent D'Acunto included false statements in her affidavit or that the trap and trace warrants would not have been granted without the alleged untruths. Nor would appellate counsel have had reason to challenge the trap and trace warrants when it was Rutledge's traffic violation—not evidence gleaned from the warrants—that provided probable cause for the stop and led to the discovery of methamphetamine and a gun in Rutledge's vehicle. Given the claim's obvious lack of merit, Rutledge also cannot show a reasonable probability that his appeal would have been successful had counsel only raised Rutledge's arguments about the warrants and Agent D'Acunto's credibility. The Government is entitled to dismissal of Grounds II and III.[7]

## B. Ground I

The Strickland test governs Rutledge's ineffective-assistance-of-counsel claims in Ground I. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). As stated already, an ineffective-assistance claim has two elements: Rutledge must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficiency. Strickland, 466 U.S. at 687.

To demonstrate deficient performance, Rutledge must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. This standard is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Rutledge has the burden of proving

---

[7]Rutledge writes in a "Supplement" he recently filed that he has "concerns" about Judge Moreno's "jurisdictional authority" to issue the trap and trace warrants. CIV Doc. 25 at 2. This argument is procedurally defaulted and Rutledge has not shown that appellate counsel was ineffective by failing to raise it.

that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To establish prejudice, Rutledge must show a "reasonable probability" that, but for his attorney's deficient performance, the outcome of his case would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When, as here, a prisoner makes multiple claims of ineffective assistance of counsel, each claim must be independently examined to determine whether there is prejudice, rather than taking the matters collectively. See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002). That is, the Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief." United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008).

### 1.  Failure to Investigate Stop Signs and Cite State Statutes

Rutledge alleges that Turner was ineffective by failing to investigate why the first stop sign on the right has solar panels and reflectors while the second stop sign on the left does not, and whether the second stop sign is on private property. He believes that these issues are relevant under SDCL §§ 32-29-2, 32-30-6.1, and 32-28-11, and argues that Turner was ineffective for failing to cite these statutes. Section 32-29-2 says that State and local authorities designate through highways by erecting stop signs "at the entrances thereto from intersecting highways" and that such signs "shall be illuminated at night or so placed as to be illuminated by headlights of an approaching vehicle." Section 32-30-6.1 states that unless an "official traffic control device has so directed," people may not stop "[w]ithin an intersection." § 32-30-6.1(3). Section 32-28-11 states that "No provision of this chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person."

10

Turner's affidavit explains that he believed that the only viable argument for challenging the traffic stop was that Rutledge did not need to stop twice and thus did not violate any traffic laws. CIV Doc. 14 ¶ 8. Turner did not investigate the solar panel and reflectors or whether the second stop sign was on private property because he felt that these issues were not relevant to the argument that Rutledge did not have to stop at both stop signs. Id. ¶¶ 7–8. He explained that he has no reason to believe that the second stop sign is on private property and that even if it is, the sign is clearly intended to apply to vehicles traveling north as Rutledge was. Id. ¶ 8. Turner added that the defense had checked the night lighting at the intersection and found it "more than adequate to allow someone traveling north to clearly see the second sign." Id. ¶ 8. Turner researched the statutes Rutledge cites but found them irrelevant, explaining that the second stop sign "was easily visible at night, would not have required vehicles to stop in the intersection, and was as legible as any standard stop sign." Id. ¶ 10.

Turner was not deficient in failing to further investigate the second stop sign or cite the three statutes. His conclusion that the statutes were irrelevant was not only reasonable but correct. Section 32-28-11 "applies only" to statutes located in Chapter 32-28 of the South Dakota Codified Laws. State v. Erwin, 831 N.W.2d 65, 69 (S.D. 2013) (stating that § 32-28-11 "applies only to SDCL chapter 32-28" and finding that § 32-28-11 did not apply to Chapter 32-26); SDCL § 32-28-11 (stating that "No *provision of this chapter*" will be enforced if the sign is not legible and properly placed (emphasis added)). Because Trooper Dowling stopped Rutledge for violating § 32-29-2.1, § 32-28-11 did not apply and had no bearing on the legality of the stop. Section 32-30-6.1(3) was also irrelevant because the record shows that the second stop sign did not require Rutledge to stop within an intersection. Rutledge argues that Government Exhibit 12, which depicts a white pickup truck making a left turn off northwest-bound Highway 18, shows that a

11

vehicle traveling north on Highway 183 would be in the intersection if it stopped at the second stop sign. CIV Doc. 1-1 at 3; CR Doc. 61 at 2. Not so. The Eighth Circuit stated that Exhibit 12 "shows a vehicle making an improper left turn." Rutledge, 61 F.4th at 602. Beyond that, several of the pictures in the record show that Rutledge would not have been stopped "within an intersection" had he stopped at the second stop sign. See CR Doc. 61 at 1–3; CR Doc. 64-1; CR Doc. 62 at 4. As for § 32-29-2, Turner attested that the night lighting at the intersection was "more than adequate to allow someone traveling north to clearly see the second sign" and that the second stop sign "was easily visible at night." CIV Doc. 14 ¶¶ 8, 10. Rutledge argues that because all the pictures of the intersection Turner submitted were taken during daylight, Turner must have never investigated the intersection at night and could not have known whether the second stop sign was visible in the dark. CIV Doc. 24 at 3. But Turner's decision to submit pictures taken during the day in no way suggests that he failed to visit the intersection at night. Moreover, pictures in the record show streetlights around the intersection, CR Doc. 61 at 2; CR Doc. 62 at 4, and Trooper Dowling testified that the intersection was lit by streetlights at the time of the stop, CR Doc. 47 at 20. In any case, § 32-29-2 does not require that a stop sign be illuminated by streetlights or lights attached to the sign. Rather, it's sufficient if the sign is placed "as to be illuminated by headlights of an approaching vehicle." § 32-29-2. Nothing in the record suggests that the headlights of a vehicle approaching the intersection from the north would not have illuminated the second stop sign. Because none of the statutes Rutledge cites apply, there is no basis for finding that the private property question and absence of reflectors on the second stop sign were relevant to the legality of the traffic stop.

### 2. Failure to Supplement Record with Evidence from the DOT

Rutledge alleges that Turner was ineffective by not supplementing the record with evidence from the DOT after Judge Moreno granted Turner's request to leave the record open. Doc. 1-1 at 2. At the suppression hearing, Turner said he had an image from Google Street View that showed only the first stop sign and that he wanted to contact the DOT to see when the second stop sign was put in. CR Doc. 47 at 137–38. Turner later submitted pictures and a video of the intersection but submitted nothing from the DOT saying when the second stop sign was put in. Rutledge's appellate attorney asked the Eighth Circuit to take judicial notice of an August 2009 image from Google Map Street View showing that the second stop sign was not present at that time. Appellant's Brief, No. 22-1708, 2022 WL 2718909, at *15–16 (July 6, 2022). Appellate counsel did not argue that the second stop sign was not present when police stopped Rutledge over 10 years later in August 2020. The Eighth Circuit addressed this on appeal:

> The parties submitted photos of the intersection at different times that suggest the highway signage may have changed. At the end of the [suppression] hearing, the district court granted defense counsel's request for additional time to submit Highway Department evidence addressing this issue, but no further evidence other than additional photos was submitted.

Rutledge, 61 F.4th at 602.

Turner's affidavit explains that because the defense's investigation "showed that the 'second' stop sign was there" when Rutledge went through the intersection, "we could not provide evidence that it was not there when Rutledge was arrested." CIV Doc. 14 ¶ 9. Rutledge alleges in his reply that Turner was deficient by not contacting the DOT and investigating the "purpose of the signage." CIV Doc. 24 at 6. Rutledge also filed an attachment listing what he says are guidelines for stop sign placement "as outlined and governed by the D.O.T. and Manual on Traffic Control Devices." CIV Doc. 25 at 2; CIV Doc. 25-1 at 1.

Rutledge's allegations do not satisfy either <u>Strickland</u> prong.  Attorneys have a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland,</u> 466 U.S. at 691.  As the Supreme Court explained, the respect afforded counsel's strategic decisions depends on the extent of the investigation they conducted: "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (cleaned up and citation omitted).  "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." <u>Rompilla v. Beard</u>, 545 U.S. 374, 383 (2005).  Here, Turner said he wanted to contact the DOT to learn when the second stop sign was put in.  CR Doc. 47 at 138.  Once Turner's investigation showed that the second stop sign was present the night Rutledge was stopped, Turner no longer had a reason to submit evidence from the DOT.  CIV Doc. 14 ¶ 9.

Rutledge filed what he says are guidelines on stop sign placement, but these guidelines in no way show that the traffic stop was unconstitutional.  And while Rutledge argues that Turner should have investigated the "purpose of the signage" and contacted the DOT, he does not explain what these actions would have produced.  Vague, conclusory allegations that counsel should have investigated further are not enough to survive a motion to dismiss.  <u>See</u> <u>United States v. Lockstein</u>, 859 F.2d 82, 83 (8th Cir. 1988) (per curiam) (rejecting a claim that counsel was ineffective for failing to investigate because the prisoner did not identify any information that counsel should have revealed to him nor cite any fact that would have changed his decision to plead guilty); <u>Hollis</u>

v. United States, 796 F.2d 1043, 1046 (8th Cir. 1986) (explaining that "vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255"); Chavez v United States, 2:19-cv-04059, 2019 WL 7906259, at *4 (W.D. Mo. Sept. 18, 2019) (rejecting claim that counsel was ineffective by failing to challenge proof of methamphetamine purity claimed in the PSR where "nothing in the record indicates the laboratory tests performed on the seized methamphetamine were unreliable or otherwise in error"). Turner's investigation of the intersection was reasonable, and Rutledge's allegations do not show prejudice even if Turner's investigation were somehow deficient.

### 3. Failure to Call Any Witnesses at the Suppression Hearing

Rutledge alleges that Turner was ineffective by not calling any defense witnesses at the suppression hearing. He asserts that Turner should have called:

- BIA Agent Derek Parish—the officer sitting in the police car with Dowling on the night of the traffic stop—because Agent Parish "very realistically had testimony that contradicted Dowling's, or at the very least failed to corroborate it." CIV Doc. 1-1 at 4.
- DOT employees and residents of Colome to testify about the stop signs and the intersection. Id.
- the officer who found the key to the safe in Rutledge's wallet. Id.

Turner's affidavit explains that he did not call Rutledge as a witness "for many reasons, including that he agreed he did not stop a second time."[8] CIV Doc. 14 ¶ 11. Turner believes that any other witnesses "would have been unnecessary, irrelevant, and/or unhelpful." Id.

Rutledge's allegations do not show either deficient performance or prejudice on this claim. First, although Turner did not offer any witnesses at the suppression hearing, he challenged the

---

[8]Rutledge asserts in his reply that he did not tell Turner that he didn't stop, but rather that he did not recall seeing a second stop sign. CIV Doc. 24 at 3. Either way, Rutledge's testimony would have supported Trooper Dowling's testimony that Rutledge did not come to a complete stop at the second stop sign.

legality of the stop in the way he saw fit. He offered multiple exhibits, CR Doc. 49, and cross-examined the testifying police officers about the stop, suggesting that Trooper Dowling had a motive to fabricate probable cause and exploring Dowling's mistake about which direction Rutledge's car went after the intersection, CR Doc. 47 at 28–44, 47–48, 79–96, 100–01, 112–28. Turner filed a supplemental brief after the hearing and submitted a video and pictures of the intersection. CR Docs. 48, 49.

Second, Rutledge's allegations do not support his claim that Turner should have called the witnesses. Rutledge does not explain what the testimony from the DOT employees and Colome residents would have been, making it impossible for this Court to rule on either the prejudice or performance prong of Strickland. See Saunders v. United States, 236 F.3d 950, 952–53 (8th Cir. 2001) (rejecting argument that prisoner's attorney was ineffective for failing to call witnesses where the prisoner did not identify which witnesses the attorney should have called or what their testimony would have been). Although Rutledge speculates that Agent Parish's testimony would have contradicted Trooper Dowling's, he does not expand on this conclusory allegation and nothing in the record supports it. Any testimony about the key to Rutledge's safe would have been irrelevant because the officers had probable cause to believe the vehicle contained drugs, and this probable cause extended to the safe. CR Doc. 64 at 11–12.

#### 4. Failure to Investigate and Challenge Demi's Reliability

Rutledge alleges that Turner was ineffective by failing to investigate and challenge Demi the drug dog's reliability. Turner explains that he does not recall receiving Demi's certifications, but that the video of the stop and his experience in challenging dog sniffs made him believe that challenging Demi "or the indication [she] clearly made" would not benefit Rutledge. CIV Doc.

16

14 ¶ 12. In Turner's view, challenging Demi would only have detracted from the better arguments that the stop lacked reasonable suspicion and was illegally prolonged. Id.

Rutledge is correct that defendants may challenge whether a dog is reliable enough to support a finding of probable cause. See Florida v. Harris, 568 U.S. 237, 247 (2013). This does not necessarily mean that Turner was ineffective for failing to investigate and challenge Demi, however. It takes minimal information to establish that a dog's alert can create probable cause. "[A] court can presume (subject to any conflicting evidence offered) that a dog's alert provides probable cause to search if a bona fide organization has certified a dog after testing his reliability in a controlled setting or if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." United States v. Gonzalez, 781 F.3d 422, 429 (8th Cir. 2015) (cleaned up and citation omitted). One of the exhibits Turner submitted at the suppression hearing was a police report from Highway Patrol Trooper Jordan Anderson, Demi's handler. CR Doc. 43 at 8. Trooper Anderson states in the report that Demi is a trained police service dog and that she indicated to the odor of an illegal drug on which she was trained when she sniffed Rutledge's vehicle. Id. Having this information and the video of the stop, Turner could reasonably conclude that the best strategy was to argue that the stop lacked reasonable suspicion and was illegally prolonged rather than to investigate Demi further and challenge her reliability. Indeed, the arguments Turner raised were legitimate, leading to oral argument before the Eighth Circuit and a thorough published opinion. Although Rutledge would prefer that Turner left no stone unturned and investigated "every detail concerning Demi," CIV Doc. 24 at 13, the Constitution guarantees him a reasonable defense, not an "ideal" one. Ford v. United States, 917 F.3d 1015, 1024 (8th Cir. 2019).

### 5. Failure to Challenge Trap and Trace Warrants

Rutledge claims that Turner was ineffective by not investigating and challenging the trap and trace warrants. Judge Moreno issued the warrant Rutledge complains of, finding that Agent D'Acunto's affidavit established probable cause to search and seize cell-site location information and call information for Rutledge's phone number. 20-mj-00054-MAM, Doc. 1. Turner explains that he reviewed the warrants but did not find any good basis for challenging them. CIV Doc. 14 ¶ 13. Nor did Turner see any benefit to challenging the warrants, as the evidence against Rutledge came from the traffic stop, not the search warrants. Id.

Rutledge has not shown deficient performance or prejudice on this claim. As explained already, none of Rutledge's arguments or citations to the record suggest that Agent D'Acunto included false statements in her affidavit or that the warrant would not have been granted without the alleged untruths. Nor does this Court's review show an absence of probable cause for issuing the warrant. See United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) ("An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." (cleaned up and citation omitted)). Turner's decision not to challenge the warrant was reasonable, and such a challenge would not have helped Rutledge anyway as the drugs and gun came from the traffic stop rather than the warrant.

### 6. Recusal of Judge Moreno

Rutledge alleges that he asked Turner whether Judge Moreno had a conflict of interest because he issued the trap and trace warrant before presiding over the suppression hearing. Rutledge does not explain how he believes Turner was ineffective regarding this issue. Turner's affidavit states that he did not feel there were grounds to ask Judge Moreno to recuse himself and that he explained this to Rutledge. CIV Doc. 14 ¶ 14. Turner was correct and not ineffective for

18

failing to raise or investigate this issue. Judge Moreno's issuance of the trap and trace warrant does not alone justify recusal, and Rutledge has identified no facts suggesting that Judge Moreno's impartiality might reasonably be questioned. See United States v. May, 70 F.4th 1064, 1073 (8th Cir. 2023) (holding that a district court's issuance of some warrants in the case "does not, of itself, require recusal").

### 7. Alleged Coerced Guilty Plea

Rutledge alleges that Turner said he would die in prison if he went to trial and lost and that this affected not only his heart, but also his family's. CIV Doc. 1-1 at 6. He claims that he told Turner to offer a plea to Count II to avoid the 10-year mandatory minimum under Count I. As Rutledge tells it, Turner replied that the Government would just seek a 10-year mandatory minimum under Count II if the methamphetamine seized from his vehicle tested "80% pure or higher."[9] Id. at 6. Rutledge alleges that he told Turner to have the Government test the methamphetamine anyway and that the Government responded very quickly that it tested 98% pure. Rutledge found this quick response suspicious and asserts that Turner should have had the methamphetamine independently tested. Turner's affidavit states that he was honest with Rutledge and Rutledge knew he could go to trial, that he did not coerce Rutledge into pleading guilty, that he made offers to the Government based on Rutledge's requests, and that Rutledge was able to review all the discovery. CIV Doc. 14 ¶ 14. Rutledge claims in his reply that his guilty plea was

---

[9]Rutledge was charged in Count II with possession with the intent to distribute "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine." CR Doc. 1. He would have faced a five-year mandatory minimum if convicted under that count. 21 U.S.C. § 841(b)(1)(B). Rutledge would have faced a 10-year mandatory minimum if convicted of possession with the intent to distribute "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." § 841(b)(1)(A).

not knowing and intelligent because Turner never told him about the elements the Government would need to prove for each count.

Rutledge's sworn testimony at the change-of-plea hearing contradicts the allegations he makes now.  Among other things, Rutledge agreed that:

- He had enough time to discuss his case with Turner.
- He was fully satisfied with the counsel, representation, and advice Turner had given him.
- He fully understood the charges to which he was pleading guilty and the mandatory minimums and maximum penalties he faced.
- He understood that he had the right to plead not guilty and go to trial and that no one could force him to do otherwise.
- He had read the plea agreement and fully understood it.
- He had read the factual basis statement and everything in it was true.
- His pleas were voluntary.

CR Doc. 87.  "[T]he defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings."  Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (cleaned up and citation omitted).  Rutledge's after-the-fact allegation of coercion and his plea not being knowing and intelligent fail to overcome the "strong presumption of verity" that attached to his statements at the change-of-plea hearing. Rather, the record shows that Rutledge understood the charges to which he was pleading guilty and that he did so voluntarily.

In any event, Rutledge's allegations do not show that he received ineffective assistance or that any alleged ineffectiveness prejudiced him.  First, Turner did not perform deficiently or coerce Rutledge by saying that he would die in prison if he went to trial and lost.  See Nguyen, 114 F.3d at 704 ("While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult

20

choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." (cleaned up and citation omitted)).  Second, Turner's failure to independently test the methamphetamine did not prejudice Rutledge as there is no reason to believe that a test showing a lower purity would have caused the Government to dismiss Count I and let Rutledge avoid any 10-year mandatory minimum.  Third, Rutledge cannot show prejudice on his claim that Turner failed to tell him the elements of the charges because Judge Moreno read the indictment to Rutledge, Rutledge swore he understood the charges against him, and he agreed that he had read the factual basis and that everything in it was true.  See Schone v. Purkett, 15 F.3d 785, 790 (8th Cir. 1994).  Nothing in the record suggests that Rutledge would have risked going to trial had Turner told him these same things.

### 8.  Failure to Object to Searches of Wallet and Safe

Rutledge claims that he filed pro se objections to the report and recommendation because Turner did not want to address the searches of his wallet and safe and told Rutledge to "do it yourself."[10]  CIV Doc. 1-1 at 7.  Rutledge argues that Turner "should have questioned" why an officer took the key from his wallet at the jail and then returned to the scene of the traffic stop to open the safe.  Id. at 7–8.  Turner responds that he objected to the report and recommendation and that he did not tell Rutledge to do so himself.  CIV Doc. 14 ¶ 15.

Rutledge has shown neither deficient performance nor prejudice.  Turner objected to the search of the safe, CR Doc. 63, but this Court overruled the objection, CR Doc. 64.  Rutledge's argument on the safe and key issue is based on his belief that the police could not look in his wallet and that the automobile exception does not apply because the safe was locked and there were no

---

[10]Rutledge's pro se objections did not mention Turner telling Rutledge to file objections himself. CR Doc. 60.  Rather, Rutledge wrote that he was "represented by capable, competent and willing counsel."  Id. at 1.

exigent circumstances. Rutledge is mistaken. See United States v. Johns, 469 U.S. 478, 480 (1985) (upholding a "warrantless search of packages several days after they were removed from vehicles that police officers had probable cause to believe contained contraband"); see also id. at 484–85 (explaining that there "is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure" and rejecting the idea that "searches of containers discovered in the course of a vehicle search are subject to temporal restrictions not applicable to the vehicle search itself"); Carter v. Parris, 910 F.3d 835, 840 (6th Cir. 2018) (explaining that it "makes no difference" that a container found in a car was locked where the officers had probable cause to believe that the container contained additional drugs); United States v. Phillips, 607 F.2d 808, 809–10 (8th Cir. 1979) (finding that the FBI did not violate the Fourth Amendment by searching the defendant's wallet incident to his arrest even though there was a delay between the arrest and the search).

### 9. Presentence Report (PSR)

Rutledge alleges that Turner reviewed the PSR with him in a cursory manner over Zoom and should have objected to "many things" but did not. CIV Doc. 1-1 at 8. Rutledge argues that his criminal history points were miscalculated and claims that one state conviction for possessing marijuana should not count because it would no longer be a crime. Turner objected to the PSR and moved for a downward variance. CR Docs. 81, 89. He explains in his affidavit that he allowed Rutledge to read the entire PSR and filed appropriate objections after discussing them with Rutledge. CIV Doc. 14 ¶ 16. Rutledge affirmed at the sentencing hearing that he had an opportunity to review the PSR with Turner. CR Doc. 102 at 5.

Rutledge has not shown that Turner performed deficiently. His allegations that Turner should have objected to "many things" are conclusory and find no support in the record. Although

Rutledge does not identify what felony marijuana conviction he believes should not have counted toward his criminal history, the Government assumed Rutledge was referring to a 2018 conviction in South Dakota for possession of a controlled substance. Rutledge has offered no facts or legal argument for why this conviction should not have counted towards his criminal history.

### 10. Failure to Investigate and Challenge Veracity of Government Witnesses

Rutledge alleges that Turner failed to investigate and question the veracity of the police officers' testimony at the suppression hearing. He cites to portions of the suppression transcript and claims that these cites show that the police officers' testimony was not credible. CIV Doc. 1-1 at 8–9. Rutledge's allegations do not meet either <u>Strickland</u> prong. First, Turner did challenge the police officers' credibility on cross-examination. <u>See</u> CR Doc. 47 at 28–44, 47–48, 79–96, 100–01, 112–28. He suggested that Trooper Dowling and the other officers had a motive to fabricate probable cause, explored Dowling's mistake about which direction Rutledge's car went after the intersection, and questioned Agent D'Acunto about the affidavit she submitted when requesting the trap and trace warrant. <u>Id.</u> Second, Rutledge does not explain what else Turner should have done or how Turner's performance prejudiced him.

### 11. Visit to Intersection

Rutledge argues that Turner was ineffective by not objecting to Trooper Dowling, Agent D'Acunto, and the AUSA prosecuting the case visiting the intersection before the suppression hearing. He argues that the defense should have been notified of this visit. This claim is meritless. Turner had no basis for objecting to the prosecution visiting the intersection and the prosecution had no duty to inform him of the visit.

### 12. Lack of Fervor and Due Diligence

23

Rutledge alleges that the Federal Public Defender's office was "so lacking in fervor, due diligence, integrity and thoroughness" that it prejudiced him "fatally." CIV Doc. 1-1 at 9. He claims that the result of his case would have been different if counsel had "addressed any of these issues, let alone all of them collectively." Id. If Rutledge meant for this to be a free-standing claim rather than a summary of his other allegations, the claim is dismissed because it is conclusory and lacks factual support.

## C. Ground IV

Ground IV alleges problems with the indictment. Rutledge argues that the dates used in Count I "don't match," because while Count I charged him with a conspiracy between March 1, 2020, and November 11, 2020, the record shows that he did not come under investigation until June 2020 and that he was arrested in late August 2020.[11] CIV Doc. 1 at 8. Rutledge points out that Count III alleges that he violated 18 U.S.C. § 922(g)(1)—the felon-in-possession subsection of § 922(g)—but then uses the language from § 922(g)(3), the unlawful-user-of-a-controlled-substance subsection of § 922(g). CR Doc. 1. He also notes that his judgment lists § 922(g)(1) as his crime of conviction.[12]

The Government is entitled to dismissal of Ground IV. "A challenge to the sufficiency of an indictment is not cognizable in a section 2255 action without a showing of exceptional circumstances." United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981) (per curiam); see

[11] The dates in the indictment were not as specific as Rutledge suggests. Rather, Count I alleged that Rutledge engaged in a conspiracy "[b]eginning at a time unknown, but no later than on or about the 1st day of March, 2020, and continuing to on or about the date of this Indictment." CR Doc. 1.
[12] Rutledge's plea agreement and factual basis also list § 922(g)(1) as the statute to which he was pleading guilty. CR Doc. 71 at 3; CR Doc. 72 at 2. In the factual basis statement, however, Rutledge admitted possessing a firearm while being an unlawful user of a controlled substance. CR Doc. 72 at 2.

also Houser v. United States, 508 F.2d 509, 514–15 (8th Cir. 1974) (explaining that challenges to "defects in the indictment" are not cognizable under § 2255 "absent a showing of exceptional circumstances, where the questions raised are of large importance, the need for remedy is apparent and the offense charged was one over which the sentencing court manifestly had no jurisdiction"). Rutledge has not shown any exceptional circumstances here. Count III of the indictment alleged all the elements of a § 922(g)(3) violation, a crime over which this Court has jurisdiction. Although the body of Count III mistakenly cites to § 922(g)(1), the heading of the indictment and the forfeiture allegation appropriately cite § 922(g)(3). CR Doc. 1. Rutledge's argument about the conspiracy dates in Count I is also meritless because he admitted "all of the factual allegations made in the indictment" when he pleaded guilty. O'Leary v. United States, 856 F.2d 1142, 1143 (8th Cir. 1988) (per curiam).

### D.     Evidentiary Hearing

A prisoner is entitled to an evidentiary hearing on a § 2255 motion unless the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255; Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). A § 2255 motion can thus be dismissed without a hearing if (1) the prisoner's allegations, accepted as true, would not entitle the prisoner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. Engelen, 68 F.3d at 240. For the reasons explained above, the motion, files, and records in this case conclusively show that Rutledge is not entitled to relief on either his independent claims or his ineffective-assistance-of-counsel claims.

When, as here, a district court denies a § 2255 motion, the movant may not appeal without a certificate of appealability. District courts cannot issue a certificate of appealability unless the

25

movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" means a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also id. (explaining that the question when a district court denies a habeas petition on procedural grounds is whether "jurists of reason would find" the district court's procedural ruling debatable). This Court declines to issue a certificate of appealability because Rutledge has neither made a substantial showing of the denial of a constitutional right nor shown that the procedural bars present here are debatable.

**III. Conclusion**

For the reasons stated above, it is

ORDERED that Rutledge's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss, Doc. 19, is granted. It is finally

ORDERED that no certificate of appealability will issue.

DATED this *10* day of May, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

26